JS-6

1  Jesse C. Swanhuyser (SBN 282186)
2  jesse@sycamore.law
   Kristina Hambley (SBN 352499)
3  kristina@sycamore.law
   SYCAMORE LAW, INC.
4  1004 O'Reilly Avenue, Ste. 100
5  San Francisco, CA 94129
   Tel: (415) 360-2962
6

7  Barak Kamelgard (Bar No. 298822)
8  barak@lawaterkeeper.org
   Benjamin Harris (Bar No. 313193)
9  ben@lawaterkeeper.org
   LOS ANGELES WATERKEEPER
10 360 E 2nd Street, Suite 250
11 Los Angeles, CA 90012
   Phone: (310) 394-6162
12

13 Attorneys for Plaintiff
14 LOS ANGELES WATERKEEPER

15

16 ## UNITED STATES DISTRICT COURT
   ## CENTRAL DISTRICT OF CALIFORNIA

17

| 18  LOS ANGELES WATERKEEPER, a California non-profit association, | Case No.: CV 23-8720-GW-PVCx |
|---|---|
| 19 | **CONSENT DECREE** |
| 20                 Plaintiff, | |
| 21          v. | |
| 22  TELL STEEL, INC., a California corporation, | |
| 23 | |
| 24 | |
| 25                 Defendant. | Federal Water Pollution Control Act, |
| 26 | 33 U.S.C. §§ 1251 to 1387 |

27

28

83717-00002/5055118.10

# CONSENT DECREE

**WHEREAS,** Plaintiff Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS,** LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS,** Defendant Tell Steel Inc. ("Defendant" or "Tell Steel") owns and operates a facility at 2345 W. 17th Street in Long Beach, California 90813 ("Facility"), under Waste Discharge Identification number 4 19I028556;

**WHEREAS,** the Facility's industrial activities consist of cutting to size and distributing prefabricated sheet metal and pipes. The Facility is categorized under Standard Industrial Classification ("SIC") Code 3498, covering Fabricated Pipe and Pipe Fittings; secondary SIC code 4212, covering local trucking without storage, and alternative SIC Code 5051, covering metals service centers and offices;

**WHEREAS,** sheet metal and pipes used at the Facility are made of stainless steel and carbon/alloy steel that contains toxic metals—including without limitation, hexavalent chromium, copper, manganese, nickel, phosphorous, and vanadium;

**WHEREAS,** storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ[1] ("General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251, *et seq.* ("Clean Water Act" or "CWA"),

---

[1] Any reference to the General Permit shall be to the then-effective version, regardless of whether such changes are the result of amendments, revisions, reissuance, or similar modification of material terms. All references in this instrument to sections or subsections that are changed in a subsequent version of the General Permit shall incorporated such subsequent reference(s) as if set forth herein, *e.g.*, the current §XI.B.6.c and d may be combined into a §XI.B.6.c, or §V may become §IV.

83717-00002/5055118.10

Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, industrial operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a) and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the General Permit requires all permittees, including Defendant, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") (collectively "BAT/BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be detailed in, and timely updated as appropriate, in the SWPPP, (3) reduce and eliminate discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program, including the MIP, designed to assess compliance with the Permit;

**WHEREAS**, on August 15, 2023, Plaintiff issued a notice of intent to file suit ("60-Day Notice Letter") to Defendant, its registered agent, the Administrator of the United States Environmental Protection Agency ("U.S. EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("LA Regional Board"), and the Regional Administrator of U.S. EPA Region IX, alleging violations of the Clean Water Act and the General Permit Water Quality Order 2014-0057-DWQ, as amended by Order Nos. 2015-0122-DWQ and 2018-0028-DWQ;

**WHEREAS**, on October 16, 2023, LA Waterkeeper filed a complaint (Dkt. 1) against Defendant in the Central District of California ("Court"), Civil Case No. 2:23-cv-08720-GW-PVC ("Complaint");

83717-00002/5055118.10

**WHEREAS**, on January 17, 2024, Defendant accepted service of the Complaint and related documents, including without limitation the summons issued by the Court on October 18, 2023 (Dkt. 8);

**WHEREAS**, Plaintiff's Complaint alleged violations of the General Permit and the Clean Water Act for Defendant's discharges of pollutants into storm drains and surface waters, specifically the Los Angeles River Estuary (the "Receiving Waters");

**WHEREAS**, Plaintiff and Defendant (collectively "Settling Parties" or "Parties") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, all actions taken by Defendant pursuant to this Consent Decree shall be made in compliance with applicable federal, state and local laws, rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District.

3.     The Complaint states a claim upon which relief may be granted against Defendant pursuant to Section 505 of the CWA, 33 U.S.C. § 1365.

4.     LA Waterkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long

83717-00002/5055118.10

thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the Term (defined below) of this Consent Decree.

## I.   OBJECTIVES

6.   It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Clean Water Act, and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice Letter and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the General Permit, and compliance with all applicable sections of the CWA.

7.   In light of these objectives and as set forth fully below, Defendant agrees to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA at the Facility.

## II.   AGENCY REVIEW AND CONSENT DECREE TERM

### A.   AGENCY REVIEW OF CONSENT DECREE

8.   <u>Agency Review</u>. Plaintiff shall submit this Consent Decree to the United States Department of Justice and U.S. EPA (the "Federal Agencies") for review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) days after receipt by the Federal Agencies, as evidenced by certified return receipts, or upon the date that the Federal Agencies provide a no objection letter, whichever is earlier ("Agency Review Period"). In the event the Federal Agencies object to entry of this Consent Decree or to any portion of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies. If the Parties are unable to resolve any issue(s) raised by the Federal Agencies in their comments, the Parties agree to expeditiously seek a settlement conference with the assigned Magistrate Judge to resolve any issue(s).

[PROPOSED] CONSENT DECREE

9.     Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order to coordinate the Court's calendar with the 45-day review period.

10.     Entry of Consent Decree. Following the expiration of the Agency Review Period, Plaintiff shall submit the Consent Decree to the Court for entry.

**B.     DEFINITIONS**

11.     Unless otherwise expressly defined herein, terms used in this Consent Decree which are defined in the CWA or in regulations or rules promulgated under the CWA have the meaning assigned to them in the statutes or regulations or rules. Whenever terms listed below are used in this Consent Decree, the following definitions apply:

a.     "BAT" means the Best Available Technology Economically Achievable.

b.     "BCT" means the Best Conventional Pollutant Control Technology.

c.     "BMPs" means Best Management Practices as defined in Attachment C (Glossary) of the General Permit.

d.     "Consent Decree" means this Consent Decree and any attachments or documents incorporated by reference.

e.     "Day" or "day" means a calendar day. In computing any period of time under this Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday, the period runs until the close of business on the next day that is not a Saturday, Sunday, or Federal or State Holiday.

f.     "Design Storm Standard" shall be interpreted in a manner consistent with the General Permit, including its appendices.

83717-00002/5055118.10

g.    "Discharge Point" means each discharge location designated in the then-current SWPPP for the Facility.

h.    "Sampling Location(s)" means the Discharge Point(s) from which Tell Steel collects storm water samples.

i.    "Effective Date" means the effective date of this Consent Decree, which shall be the date of full execution by the Parties.

j.    "Entry Date" means the day this Consent Decree is approved and entered by the Court.

k.    "Forecasted Rain Event" means a greater than 25% probability of precipitation above 0.1 inches as projected by the National Oceanic and Atmospheric Administration for "90813, West Side, Long Beach, CA, USA" at https://forecast.weather.gov/MapClick.php?lat=33.7849&lon=-118.2138.

l.    "MIP" means a Monitoring Implementation Plan.

m.    "Operating Day(s)" means all days on which Defendant's staff conducts any industrial activity at the Facility.

n.    "PPT" means Pollution Prevention Team.

o.    "Qualified Industrial Storm Water Practitioner" or "QISP" shall have the definition set forth in General Permit § IX.A.

p.    "Qualifying Storm Event" or "QSE" shall have the definition set forth in General Permit § XI.B.

q.    "Reporting Year" means the period from July 1 of a given calendar year to June 30 of the following calendar year.

r.    "SMARTS" means the California State Water Resources Control Board's Stormwater Multiple Application and Report Tracking System.

83717-00002/5055118.10

s.   "SWPPP" means a Storm Water Pollution Prevention Plan.

t.   "Term" means the period between the Effective Date and the "Termination Date."

u.   "Termination Date" means the latest of:

    i.    June 30, 2027;

    ii.    June 30 following two (2) years from Tell Steel's installation and optimization (*i.e.,* full functionality, including without limitation benchmark testing) of advanced treatment, if required, pursuant to this Consent Decree during the Term, for all storm water discharges at the Facility;

    iii.    seven (7) days from the conclusion of any proceeding or process to enforce the Consent Decree which proceeding or process is initiated prior to the later of the dates set forth in paragraphs 11.u.i and 11.u.ii above; or

    iv.    seven (7) days from Defendant's completion of all payments and other affirmative duties required by this Consent Decree.

    v.    Alternatively, the Consent Decree will terminate ten (10) business days after Tell Steel notifies LA Waterkeeper (see paragraph 67) that it has received written approval/acceptance notification from the LA Regional Board via SMARTS or otherwise for "No Exposure Certification" ("NEC") coverage at the Facility following an inspection that confirms compliance with all NEC requirements of the General Permit.

v.      "Wet Season" means the period beginning October 1st of any

given calendar year and ending June 30th of the following calendar

year.

## III.   COMMITMENTS OF THE SETTLING PARTIES

### A.   STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

12.     <u>Non-Storm Water Discharge Prohibition</u>. Any unauthorized non-storm

water discharge, as defined in the General Permit, shall be a violation of this Consent

Decree.

13.     <u>Prohibition on Industrial Activity in Areas Designated as Non-Industrial

or No-Exposure</u>. Any industrial activity occurring in areas designated as non-

industrial or no-exposure in the Facility's then-effective SWPPP (or SWPPP Site

Map(s)) is a violation of this Consent Decree. For purposes of this Consent Decree,

industrial activity with respect to areas designated as "Non-Industrial" and exposure

with respect to areas designated as "No-Exposure" shall be interpreted in a manner

consistent with the General Permit.

14.     <u>Current and Additional Best Management Practices</u>. At all times,

Defendant shall implement BMPs identified in its SWPPP and BMPs described

herein, and shall develop and implement additional BMPs as necessary to comply

with the provisions of this Consent Decree and the General Permit, including but not

limited to those (1) necessary to comply with BAT/BCT-level pollutant reductions;

and (2) the General Permit's Receiving Water Limitations, which require that

discharges from the Facility "not cause or contribute to an exceedance of any

applicable water quality standards" contained in a Statewide Water Quality Control

Plan or the applicable Regional Board's Basin Plan.

15.     <u>Rain Gauge/Sensor</u>. Defendant shall install and maintain an electronic

rain gauge or sensor at the Facility within thirty (30) days of the Effective Date. The

rain gauge/sensor shall be capable of measuring precipitation down to at least 0.1

83717-00002/5055118.10

inches, and record start/stop times and non-cumulative precipitation for each rain event. During the Term, Defendant shall collect data using the gauge/sensor for all precipitation events to the nearest 0.1 inch, including start/stop times. Data from the rain gauge/sensor shall be conclusive of precipitation quantities and timing for purposes of this Consent Decree, except in the event of equipment malfunctions caused by something outside of Defendant's control.

16.   <u>Structural and Non-Structural BMPs for the Facility</u>. Within seventy-five (75) days of the Effective Date, Defendant shall develop and implement the following BMPs at the Facility:

a.   Identify potential sources of offsite contributions of pollutants, *i.e.*, sources not attributable to Tell Steel's industrial activities, and seek to eliminate those sources to reduce pollutants in storm water;

b.   As needed, install concrete berms, curbs, or similarly effective permanent physical barriers that prevent storm water discharges from any point other than designated Discharge Points;

c.   Timely remove, and prevent the long-term storage of, all unused and/or inutile racks, vehicles, equipment, paint, and waste scrap materials from the entire property;

d.   Employ and secure new wattles/filter socks (using biochar or equivalent media) at Discharge Location 1 ("DL1")/Sampling Location 1 ("SP1"), which is located south of Bays 1-4 at the approximate location in IMAGE 1 (below).

[PROPOSED] CONSENT DECREE



IMAGE 1

e. Design, install, and maintain a filtration unit at Sampling Point 2 ("SP2") materially consistent with the design detailed in Appendix 1. The filtration unit shall be sized to filter storm water runoff meeting the Design Storm Standard;

f. Implement a three-pronged sweeping program:

i. *Prong 1*: use a vacuum sweeper certified to collect all PM-30 and larger particulate on all paved areas at least once per month outside of the Wet Season, once per week during the Wet Season, and within twenty-four (24) hours prior to a Forecasted Rain Event, unless that would require sweeping on a non-Operating Day, in which case sweeping shall take place on the Operating Day prior to a Forecasted Rain Event;

ii. *Prong 2*: complete hand sweeping and/or vacuuming on the same schedule described in paragraph 15.f.i for all industrial areas that the vacuum sweeper cannot effectively access; and

iii. *Prong 3*: in order to reduce the potential for track out of particulate from areas in the Facility's unexposed and partially-exposed industrial areas (including without limitation bays,

[PROPOSED] CONSENT DECREE

storage units, covered areas), complete a detailed sweeping of all interior areas at the Facility between September 1st and September 15th each calendar year during the Term using the vacuum sweeper, and hand sweeping and/or vacuuming of all areas that the vacuum sweeper cannot effectively access.

g. Employ and secure new wattles/filter socks (using biochar or equivalent media) to reduce concentrations of sediments, metals, and organic materials in storm water discharged from the Facility. The wattles/filter socks shall be placed around: i) all downspouts; ii) along the rear passageway/road of Bays 1 to 4 (as indicated in the Site Map at Appendix 2) during any and all periods of rainfall on Operating Days (as well as before close of business on a given Operating Day when rain is forecasted to occur at any point before the subsequent Operating Day[2]). The wattles/filter socks shall be configured to achieve maximum contact time with storm water prior to discharge, *i.e.*, in multiple layers and/or overlapping formations;

h. Defendant shall thereafter employ and secure new wattles/filter socks in the same manner as set forth in paragraph 15.g, between September 15th and September 30th of each calendar year during the Term. Defendant shall also replace any and all wattles/filter socks on an ongoing basis when there is evidence of degradation or ineffectiveness, *e.g.*, rips, tears or other visual damage, and/or

---

[2] For example, at the close of business on Wednesday if it is forecasted to rain before the beginning of business on Thursday; at the close of business on Friday if it is forecasted to rain on either Saturday or Sunday; and at the close of business on the last Operating Day before a Federal or State Holiday, or any other day on which the Facility will not be operating, if it is forecasted to rain at any point before the first Operating Day thereafter.

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

sampling data demonstrating the wattles/filter socks are not sufficiently reducing pollutant concentrations;

i.   Prior to the start of a Forecasted Rain Event, and as close as possible to such event (*i.e.*, on the same Operating Day or at the close of business on the immediately previous Operating Day), cover all industrial materials—including without limitation, debris and scrap bins, trash cans, and storage areas with only vertical protection—with tarps, lids, or other coverings that prevent exposure to rainfall, or place such items into a covered structure adequate to prevent exposure to rainfall;

j.   Design pre-rain protocols, include such protocols in the Facility's SWPPP, and implement such protocols during the Wet Season prior to a Forecasted Rain Event, and as close as possible to such event (*i.e.*, on the same Operating Day or at the close of business on the immediately previous Operating Day). Pre-rain protocols must include, at a minimum:

    i.   inspecting the filtration unit, and cleaning (as necessary) and replacing parts (as necessary);

    ii.   inspecting and replacing (as necessary) all wattle/filter sock BMPs;

    iii.   covering, removing, and/or relocating all exposed industrial materials; and

    iv.   inspecting all equipment associated with air emissions filtration and capture;

k.   Institute an equipment and vehicle maintenance program that ensures:

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

  i. except when conducted under cover, no maintenance activities occur during wet weather, unless such maintenance is required for safe operation of the Facility, *e.g.*, the forklift breaks down in a location that prevents ingress/egress;

  ii. maintenance activities occur only in designated work areas or beneath covered maintenance areas; and

  iii. when maintenance activities must be performed outdoors (*i.e.*, not under cover), action shall be taken to immediately contain, capture, and clean up any discharge or spills of waste fluids to the ground.

**B.** **MONITORING AND REPORTING**

17. Defendant shall develop and implement an expanded MIP that includes storm water sample collection and analysis at locations identified in paragraph 18 (below) from all Qualifying Storm Events for the 2024-2025 Reporting Year of this Consent Decree, up until a maximum of six (6) QSEs, with half of the samples collected between July 1 and December 31, 2024 and the other half collected after January 1 and June 30, 2025. Such sampling shall take place as soon as possible within the four (4) hour period required by the General Permit § XI.B.5. Such sampling and analysis shall comply with General Permit § XI. Any failure or inability to collect samples as required, including without limitation as a result of insufficient discharge, shall be documented, including by taking photographs (*e.g.,* demonstrating there was insufficient discharge), and submitted to LA Waterkeeper by email within ten (10) days of a written request for such records by Waterkeeper. The email shall also contain the rain gauge/sensor data for the dates/times when a sample allegedly should have been collected but was not.

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

18. <u>Sampling Locations</u>. Samples shall be collected, at a minimum, from the following three (3) locations as identified on the attached Site Map at Appendix 2:

    a.    SP1: flow from the southernmost corner of the Facility where water flows onto West 17th Street at DL1;

    b.    SP2: the sampling port from the filtration unit; and

    c.    SP3: ponded water or sheet flow from the causeway at the rear of Bays 1 through 4. The sample shall be collected from as close to DL3 as possible, while ensuring that samples do not contain any storm water from the street or other facilities.

19. <u>Sample Analysis</u>. All samples collected shall be analyzed for all parameters required by General Permit § XI.B.6, including without limitation those pollutants listed in Table 1.

20. <u>Adding Parameters to MIP</u>. In the event that Defendant analyzes storm water samples for any additional parameters that are listed in 40 C.F.R. § 131.38 and/or in the General Permit as a result of changed operations, a revised pollutant source assessment, or new mandate from a regulatory agency—such parameter shall be incorporated into this Consent Decree as if listed in Table 1 for all purposes, including any Action Plan requirements (defined below). The Parties shall meet and confer regarding the applicable Table 1 limit for such purposes within ten (10) days of Defendant's decision to add any parameters.

21. <u>Removing Parameters from MIP</u>. If sample analyses from four (4) consecutive Qualifying Storm Events yield "non-detect" levels of any pollutant listed in Table 1 from all Discharge Points (as designated in the then-effective SWPPP), Tell Steel may discontinue testing for that/those parameter(s) without violating this Consent Decree.

22. <u>Laboratory and Holding Time</u>. Except for pH samples, Defendant shall cause delivery of all samples to a California-certified environmental laboratory for

83717-00002/5055118.10

analysis within allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a portable instrument that has been calibrated according to the manufacturer's instructions.

23.   <u>Detection Limit</u>. Defendant shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the General Permit and Table 1 below.

24.   <u>Reporting</u>. Within fifteen (15) days of receiving any laboratory report with the results of storm water samples collected at the Facility, Defendant shall either: a) provide the report(s) to LA Waterkeeper; or b) upload the report(s) to SMARTS, and email LA Waterkeeper with notification of said upload.

C.   **REDUCING/PREVENTING POLLUTANTS IN FACILITY DISCHARGES**

25.   <u>Table 1 Numeric Limits</u>. Defendant shall develop and implement BMPs for storm water discharges from the Facility that reduce pollutant concentrations to meet numeric limits in Table 1.

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

**TABLE 1**[3]

| PARAMETER | NUMERIC LIMIT | SOURCE |
|---|---|---|
| **pH** | **6.0 – 9.0 S.U.**[*] | **U.S. EPA BENCHMARK/NAL** |
| **OIL & GREASE** | **15 MG/L**[**] | **U.S. EPA BENCHMARK/NAL** |
| **TOTAL SUSPENDED SOLIDS** | **100 MG/L** | **U.S. EPA BENCHMARK/NAL** |
| **NITRITE + NITRATE NITROGEN AS N** | **0.68 MG/L** | **U.S. EPA BENCHMARK/NAL** |
| **ALUMINUM (TOTAL)** | **1.1 MG/L** | **U.S. EPA BENCHMARK/NAL** |
| **CHROMIUM VI (DISSOLVED)** | **1.1 MG/L** | **CAL. TOXICS RULE** |
| **NICKEL (DISSOLVED)** | **0.074 MG/L** | **CAL. TOXICS RULE** |
| **COPPER (TOTAL)** | **2024-2025: 0.0332 MG/L** | **NAL** |
| | **2025-2026: 0.0195 MG/L** | **NEGOTIATED TERM** |
| | **2026-: 0.0058 MG/L** | **TMDL TNAL** |
| **LEAD (TOTAL)** | **0.221 MG/L** | **TMDL TNAL** |
| **ZINC (TOTAL)** | **2024-2025: 0.26 MG/L** | **NAL** |
| | **2025-2026: 0.1775 MG/L** | **NEGOTIATED TERM** |
| | **2026-: 0.095 MG/L** | **TMDL TNAL** |

\* s.u. = standard units.
\*\* mg/L = milligrams per liter.

26.   Table 1 Exceedances. An "Exceedance" is established where the concentration of any pollutant or pollutants in any two (2) storm water samples from any of the Facility's Sampling Locations (as described in paragraph 18, or as designated by Tell Steel during the Term) exceeds any numeric limit contained in Table 1 during any Reporting Year during the Term. Specifically, an Exceedance occurs when: a) the concentrations of the same pollutant taken at different Sampling Locations during a single Qualifying Storm Event exceed the Table 1 limit (*e.g.,* zinc samples from DP2 and DP3 exceed during a single Qualifying Storm Event on November 15, 2024); b) the concentrations of the same pollutant taken at the same Discharge Point during separate Qualifying Storm Events exceed the Table 1 limit

---

[3] In the event there are changes to any of the underlying regulatory provisions on which the Table 1 numeric standards are based, such new provisions shall be incorporated into Table 1 as if set forth above.

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

(*e.g.,* zinc samples from DP2 exceed during separate Qualifying Storm Events on each of November 15, 2024 and February 15, 2025); c) the concentrations of the same pollutant taken at the different Discharge Points during separate Qualifying Storm Events exceed the Table 1 limit (*e.g.,* zinc samples from DP2 exceed during a Qualifying Storm Event on November 15, 2024 and  from DP3 during a Qualifying Storm Event on February 15, 2025. Any Exceedance is a violation of this Consent Decree.

27. <u>Action Plan for Table 1 Exceedances</u>. As of the Effective Date, and for the remainder of the Term, if Defendant has an unauthorized non-storm water discharge in violation of paragraph 12, or storm water samples demonstrate an Exceedance (as defined above), Defendant shall prepare and submit to LA Waterkeeper a plan ("Action Plan") for achieving compliance with the non-storm water discharge prohibition and/or reducing pollutant concentrations to meet the Table 1 limits. The complete draft Action Plan shall be submitted to LA Waterkeeper within thirty (30) days of the unauthorized non-storm water discharge or the receipt of the laboratory report demonstrating the Exceedance, as applicable.

28. <u>Action Plan Requirements</u>. Any complete Action Plan submitted shall include at a minimum: (a) the identification of the applicable unauthorized non-storm water discharge and/or contaminant(s) discharged in excess of the numeric limit(s); (b) an assessment of the cause/source of any unauthorized non-storm water discharge and/or the contaminant(s)/limit(s) exceeded; (c) a narrative assessment of the effectiveness of existing BMPs; (d) the identification of additional BMPs, including detailed design plans and calculations, that Defendant will implement to achieve compliance with the unauthorized non-storm water discharge prohibition and/or Table 1 limit(s); and (e) time schedules for implementation of the proposed BMPs. To the extent Defendant believes that any Exceedance(s) is/are the result of pollutants originating from an adjacent facility, the Action Plan shall include data (including

83717-00002/5055118.10

1    without limitation storm water sample analysis of any run-on and/or emissions

2    sampling data) and technical analysis sufficient to establish such fact(s).

3        29.    <u>Requirements for Action Plan Triggered by Exceedances in Consecutive</u>

4    <u>Reporting Years</u>. In the event of an Exceedance in any Reporting Year following a

5    Reporting Year in which the data established an Exceedance at the same Sampling

6    Location (*i.e.*, two consecutive Reporting Years with an Exceedance regardless of

7    whether it was the same or different pollutants in each year), then Defendant is

8    required to meet and confer with LA Waterkeeper regarding BMP strategies.

9    Following the meet and confer process, Defendant shall install an advanced storm

10   water treatment system at LA Waterkeeper's option. Accordingly, in order to comply

11   with the requirements of paragraph 28(d), the Action Plan submitted for the first

12   Exceedance at the same Sampling Location in the second of the two consecutive

13   Reporting Years shall include detailed design plans and calculations for an advanced

14   storm water treatment system, if required by LA Waterkeeper following a meet and

15   confer. Defendant shall select treatment technology from those proven to be capable

16   of meeting Table 1 limits consistently (*e.g.*, polymer- or electrocoagulation-assisted

17   filtration) marketed by companies such as Clearwater Services, Clear Creek Systems,

18   WaterTectonics, and StormwateRx. If a polymer-based system is selected, the

19   specific polymeric agent shall be chosen based on bench-scale testing utilizing

20   stormwater runoff from the facility.

21       30.    <u>Action Plan Implementation</u>. The time schedule(s) for implementation of

22   BMPs described in any Action Plan shall ensure that all BMPs are timely

23   implemented, but no later than September 15 of the Reporting Year following the

24   Exceedance(s) that triggered the requirement to prepare an Action Plan (except as set

25   forth in paragraph 66). Within fifteen (15) days of the BMPs set forth in the Action

26   Plan being implemented, Defendant shall confirm to LA Waterkeeper in writing, with

27

28

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

1  photographs (if applicable), that such BMPs have been implemented as set forth in
2  the Action Plan.

3         31.    <u>Action Plan Review</u>. LA Waterkeeper shall have thirty (30) days upon
4  receipt of Defendant's complete draft Action Plan to provide Defendant with
5  comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed
6  revisions to an Action Plan, Defendant shall consider each of LA Waterkeeper's
7  recommended revisions and accept them or justify in writing why any proposed
8  revision or recommendation is not incorporated. Action Plan(s) developed and
9  implemented pursuant to this Consent Decree are an obligation of this Consent
10 Decree. Any disputes as to the adequacy of an Action Plan shall be resolved pursuant
11 to the dispute resolution provisions of this Consent Decree, set out in Section IV
12 below. Disputes regarding the adequacy of a particular BMP shall not impact the
13 schedule for implementing any other BMP set forth in the Action Plan.

14        32.    <u>Updating SWPPP with Action Plan Changes</u>. Defendant shall revise the
15 then-current SWPPP to reflect the changes required by the Action Plan, as set forth in
16 paragraph 38 below.

17        33.    <u>Action Plan Payments</u>. Defendant shall pay:

18             a.   three thousand dollars ($3,000.00) each time an Action Plan is
19                  submitted to LA Waterkeeper pursuant to paragraph 27;
20             b.   six thousand dollars ($6,000.00) for the first Action Plan
21                  submitted pursuant to paragraph 29; and
22             c.   any Action Plan payment per paragraph 29 that is required after an
23                  initial payment has been made (per subparagraph 33(b)), shall be
24                  for actual fees and costs incurred by LA Waterkeeper up to, but
25                  not exceeding, six thousand dollars ($6,000.00).
26 Action Plan payments per subparagraph 33(a) and (b) are due at the same time that an
27 Action Plan is submitted. Any Action Plan payment per subparagraph 33(c) is due
28

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

within fifteen (15) business days of Defendant's receipt of an invoice, bill, or similar written request from LA Waterkeeper. All Action Plan payments shall be made to "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required will constitute a breach of the Consent Decree.

     **D.**    **VISUAL OBSERVATIONS**

     34.   <u>Storm Water Discharge Observations</u>. During the Term, appropriately trained Facility staff shall conduct visual observations during operating hours during: (i) at least four QSEs as required by Section XI.A.2 of the General Permit; and (ii) two (2) additional QSEs. Such inspections shall comply with all requirements of General Permit § XI.A.2, and any successor thereof.

     35.   <u>Monthly Visual Observations</u>. During the Term, appropriately trained staff of Defendant shall conduct monthly non-storm water visual observations of the Facility. Such inspections shall comply with all requirements of General Permit § XI.A.1, and any successor thereof. Such monitoring shall include outfalls, Discharge Points, outdoor industrial equipment and storage areas, outdoor industrial activities areas, BMPs, and all other potential sources of industrial pollutants. All Discharge Points shall also be inspected for accumulation of dust, sediment, sand, grit, oily substances, oily sheens upon any standing water, and other materials associated with operations at the Facility. During the Wet Season, such inspections shall further include observations of all storm water BMPs that are used only during the Wet Season at the Facility to ensure that operational BMPs are being implemented, structural BMPs are in good condition or working order, and that BMPs have been effective in producing clean conditions at the Facility. Such inspections shall further include observation as to whether there are any non-storm water discharges from the Facility.

36.  <u>Visual Observations Records</u>. Defendant shall maintain observation records, including photographs where applicable, to document compliance with paragraphs 34 and 35. Such records shall include, but not be limited to, the persons who completed the inspection, the date of the inspection, and notes sufficient to describe the completed activity and all observations thereof, including but not limited to: (i) whether BMPs are in proper, working condition; (ii) whether any repair, replacement, or operation and maintenance is needed for any BMPs; (iii) other conditions that have the potential to lead to pollutant loading in storm water discharges; and (iv) photographs of all the foregoing.  Defendant shall provide LA Waterkeeper with a copy of those records within ten (10) days of receipt of a written request from LA Waterkeeper for those records.

37.  <u>Employee Training Program</u>. Within forty-five (45) days of the Effective Date, Defendant shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of designated employees at the Facility to comply with the General Permit and this Consent Decree at all times ("Designated Employees"), regardless of employee turnover; and (2) that these Designated Employees are properly trained to perform or supervise the activities required by the General Permit and this Consent Decree ("Training Program"):

a.  <u>Materials</u>. Training materials should include, at minimum, a detailed Training Manual or Standard Operating Procedure, including drawings and diagrams where appropriate, for reference and use by Defendant's personnel to ensure effective implementation of all BMPs at the Facility;

b.  <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendant shall provide a translator or

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

1    translators at all trainings where such translation is likely to

2    improve staff comprehension of the Training Program and

3    improve compliance with this Consent Decree and the General

4    Permit;

5    c.    Staff Training. Annual trainings must be provided by a QISP.

6    Subsequent training shall be provided by a QISP or other

7    Designated Employee previously trained by a QISP and familiar

8    with the requirements of this Consent Decree and the General

9    Permit, and shall be repeated as necessary to ensure that all

10    relevant employees are familiar with the requirements of this

11    Consent Decree, the Permit, and the Facility's SWPPP. All

12    relevant new staff shall receive this training before assuming

13    responsibilities for implementing the SWPPP;

14    d.    Sampling Training. Defendant shall designate an adequate number

15    of employees necessary to collect storm water samples as required

16    by this Consent Decree, including training to ensure samples are

17    properly collected, stored, and submitted to a certified laboratory;

18    e.    Visual Observation Training. Defendant shall provide training on

19    how and when to properly conduct visual observations to

20    Designated Employees;

21    f.    Non-Storm Water Discharge Training. Defendant shall train all

22    Designated Employees at the Facility on the General Permit's

23    prohibition of non-storm water discharges, so that Designated

24    Employees know what non-storm water discharges are and how to

25    detect and prevent non-storm water discharges;

26    g.    Employees. All Designated Employees at the Facility shall

27    participate in the Training Program annually. New Designated

28

Employees shall participate in the Training Program within ninety (90) days of their hiring date; and

h. <u>Records</u>. Defendant shall maintain training records to document compliance with this Paragraph and shall provide LA Waterkeeper with a copy of these records within ten (10) days of receipt of a written request.

38. <u>SWPPP Revisions</u>.

a. <u>Initial SWPPP Revisions</u>. Defendant shall amend the Facility's SWPPP to incorporate the requirements in this Consent Decree and comply with the General Permit and submit the complete, updated SWPPP to LA Waterkeeper within sixty (60) days of the Effective Date for LA Waterkeeper's review and comment. The complete, updated SWPPP shall contain, at a minimum, the following elements:

i. A revised pollutant source assessment, including all elements required by General Permit § X.G as well as assessments of the potential for the Facility's storm water discharges to contain pollutants for which the Receiving Waters are 303(d) listed and/or have Total Maximum Daily Loads;

ii. A detailed narrative description and assessment of each industrial activity with the potential to impact storm water quality occurring at the Facility as required by General Permit § X.G;

iii. Descriptions of all BMPs in accordance with General Permit § X.H.4, including without limitation BMPs required by this Consent Decree;

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

iv.   A set of site maps that comply with General Permit § X.E and provisions of this Consent Decree;

v.   A MIP as required by General Permit §§ XI and X.I;

vi.   A designation (by position/title) of employees responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation, *e.g.*, visual inspection of each specific area, monitoring each specific BMP, sampling, etc.; and

vii.   A Training Program as described above at paragraph 37.

b.   <u>Additional SWPPP Revisions</u>.

i.   Within thirty (30) days after approval of any Action Plan by LA Waterkeeper (or resolution pursuant to Dispute Resolution), Defendant shall revise the then-current SWPPP to reflect the changes required by the Action Plan and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

ii.   Within thirty (30) days after any changes in industrial activities, sources of industrial pollutants, changes to Discharge Points, or changes to sections of the SWPPP identified in the SWPPP as requiring a SWPPP revision (including but not limited to, changes in Facility contacts or PPT members, changes or additions of BMPs, or changes in or additions of industrial activities that impact storm water discharge), Defendant shall revise the then-current SWPPP to reflect such changes and submit the complete, updated SWPPP to LA Waterkeeper for LA Waterkeeper's review and comment.

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

c.   Review of SWPPP.  For any SWPPP updates pursuant to Paragraphs 38.a or b, LA Waterkeeper shall have thirty (30) days upon receipt of Defendant's complete draft SWPPP to provide Defendant with comments. Within seven (7) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendant shall consider each of the comments and proposed changes and either accept them or justify in writing why a change is not incorporated. The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below. Following its incorporation of proposed modification or additions (if any) into each revised SWPPP, Defendant shall upload the SWPPP to SMARTS.

**E.   COMPLIANCE MONITORING AND REPORTING**

39.   LA Waterkeeper may conduct one annual site inspection ("Site Inspection") during each Reporting Year during the Term for the purpose of ensuring compliance with this Consent Decree and the General Permit. In the event of a dispute regarding Defendant's compliance with this Consent Decree, and provided a Site Inspection would be relevant to resolving the Parties' dispute, the Parties agree to meet and confer regarding one additional Site Inspection at Plaintiff's request. Plaintiff shall not unreasonably request, and Defendant shall not unreasonably deny, an additional Site Inspection. Any Site Inspection shall occur during normal business hours. For dry weather inspections, LA Waterkeeper will provide Defendant with at least forty-eight (48) hours' notice prior to a Site Inspection. For any Site Inspection requested to occur in wet weather, Plaintiff will provide at least twenty-four (24) hours' notice, and shall be entitled to adjust timing or reschedule during normal

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

business hours in the event the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. Notice will be provided by electronic mail to the individual(s) designated below at paragraph 67. During the Wet Weather inspection, Plaintiff may request that Defendant collect a sample of industrial storm water discharge from the Facility's designated industrial discharge point(s) referenced in its SWPPP, to the extent that such discharges are occurring. Defendant shall collect the sample and provide a split sample to LA Waterkeeper. LA Waterkeeper's representative(s) may observe the split sample(s) being collected by Defendant's representative. LA Waterkeeper shall be permitted to take photographs or video recording during any Site Inspection.

40.  <u>Document Provision</u>. Within seven (7) days of: (i) the later of a BMP's implementation during the Term; or (ii) the Effective Date, Defendant shall confirm to LA Waterkeeper in writing, with photographs, that such BMP has been implemented and is operational as set forth above. This requirement applies to, without limitation, paragraph 15 (rain gauge installation), paragraph 16.b (installation of physical barriers), paragraph 16.c (removal of unused materials and equipment), paragraph 16.d (DL1 BMP installation), paragraph 16.e (filtration unit installation), and paragraph 16.g (installation of new wattles/filter socks). Additionally, Defendant shall notify and submit documents to LA Waterkeeper during the Term as follows:

a.  Defendant shall copy LA Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality at the Facility that are submitted to the LA Regional Board, the State Board, and/or any state or local agency, county or municipality;

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

b.    Within seven (7) business days of receipt by Defendant, send to LA Waterkeeper any compliance document, inspection report, written communication and/or correspondence (except automated or non-substantive replies and confirmations), or any document related to storm water quality at the Facility received by Defendant from the LA Regional Board, the State Board, and/or any state or local agency, county, municipality. Defendant shall mail paper copies or email electronic copies of documents to LA Waterkeeper at the relevant notice address contained below.

41.    <u>Compliance Monitoring</u>. Defendant agrees to partially defray costs associated with Plaintiff's monitoring of Defendant's compliance with this Consent Decree during the Term by paying five thousand dollars ($5,000.00) per Reporting Year during the Term. The initial payment shall be made within thirty (30) days of the Entry Date, and subsequent annual payments shall be made on the anniversary of the first payment. Payments pursuant to this paragraph shall be made via check, made payable to: "Los Angeles Waterkeeper" via certified mail, return receipt requested to Los Angeles Waterkeeper, c/o Barak Kamelgard, 360 E 2nd Street Suite 250, Los Angeles, CA 90012. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

**F.    ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST**

42.    <u>Environmental Mitigation Project</u>. To fund environmental project activities that will reduce or mitigate the impacts of storm water pollution from industrial activities occurring in the Los Angeles River and greater Los Angeles and Long Beach Waters, Defendant agrees to make a payment totaling thirty-five thousand dollars ($35,000.00) to the Rose Foundation made within thirty (30) days of the Entry Date, payable to the Rose Foundation for Communities and the

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

Environment and sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

43.    <u>LA Waterkeeper's Fees and Costs</u>. Defendant agrees to pay a total of ninety-five thousand dollars ($95,000.00) to LA Waterkeeper to partially reimburse Plaintiff for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit, and negotiating a resolution of this matter within thirty (30) days of the Entry Date. The payment shall be made payable to: Sycamore Law Inc., Attorney Client Trust Account and delivered by overnight carrier to 1004 O'Reilly Avenue, San Francisco, CA 94129. Failure to submit payment as required under this Paragraph will constitute breach of the Consent Decree.

44.    In the event that Defendant fails to submit to LA Waterkeeper any payment, document, report, or communication required by this Consent Decree, Waterkeeper shall provide written notice to Defendant of such missed deadline. Defendant shall have five (5) business days from receipt of such notice to respond to Waterkeeper, and, if necessary, cure such delinquency. If Defendant fails to respond and, if necessary, cure such alleged delinquency within five (5) business days of receipt of Waterkeeper's notice, then Defendant shall pay a stipulated payment of Five Hundred Dollars ($500) per day. Such stipulated payments shall be made by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 42. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607. Defendant agrees to make the stipulated payment within fourteen (14) days after the resolution of the event that precipitated the stipulated payment liability.

45.     <u>Interest on Late Payments</u>. Defendant shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the next business day after the payment is due and shall be computed at a rate equal to the lower of: (i) 7% per year (0.583% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendant is current on all payments then due under this Consent Decree, and shall be paid at the same time that the payments, fees, or costs owed are paid to LA Waterkeeper. Interest on late payments shall be paid by check payable to: Rose Foundation for Communities and the Environment, and such funds shall be used for the sole purpose of funding environmentally beneficial projects, as described in Paragraph 42. Payment shall be sent via overnight mail to Rose Foundation, 201 4th Street, Suite 102, Oakland, CA 94607.

## IV.     DISPUTE RESOLUTION

46.     This Court shall retain jurisdiction over this matter for the Term for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

47.     <u>Meet and Confer</u>. Either Party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other Party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) days from the date of the notice.

48.     <u>Settlement Conference</u>. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 47, the Parties agree

[PROPOSED] CONSENT DECREE

1    that the dispute may be submitted for formal resolution by filing a motion before the

2    United States District Court for the Central District of California. The Parties agree to

3    request an expedited hearing schedule on the motion.

4         49.    In resolving any dispute arising from this Consent Decree before the

5    Court, the prevailing Party shall be entitled to seek fees and costs incurred pursuant to

6    the provisions set forth in Section 505(d) of the Clean Water Act, 33 U.S.C. §

7    1365(d), and applicable case law interpreting such provisions, or as otherwise

8    provided for by statute and/or case law.

9    **V.      MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

10        50.    <u>Plaintiff's Waiver and Release of Defendant</u>. In consideration of the

11   above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf

12   and on behalf of its officers and directors, release Defendant, its officers, directors,

13   managers, employees, members, parents, subsidiaries, divisions, affiliates, successors

14   or assigns, agents, attorneys and other representatives, from and waives all claims

15   that were raised in the 60-Day Notice Letter and/or the Complaint up to and including

16   the Termination Date of this Consent Decree.

17        51.    <u>Defendant's Waiver and Release of Plaintiff</u>. In consideration of the

18   above, upon the Effective Date of this Consent Decree, Defendant, on its own behalf

19   and on behalf of its officers, directors, employees, parents, subsidiaries, affiliates and

20   each of their successors or assigns, release Plaintiff, its officers and directors, from

21   and waives all claims related to the 60-Day Notice Letter and/or the Complaint up to

22   and including the Termination Date of this Consent Decree.

23        52.    Nothing in this Consent Decree limits or otherwise affects Plaintiff's

24   rights to address or take any position that it deems necessary or appropriate in an

25   informal or formal proceeding before the State Board, LA Regional Board, U.S. EPA,

26   or any other judicial or administrative body on any matter relating to Defendant's

27

28

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

compliance at the Facility with the General Permit or the Clean Water Act occurring
or arising after the Effective Date.

## VI.    MISCELLANEOUS PROVISIONS

53.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree
for the purpose of avoiding prolonged and costly litigation. Neither the Consent
Decree nor any payment pursuant to the Consent Decree shall constitute or be
construed as a finding, adjudication, or acknowledgement of any fact, law or liability,
nor shall it be construed as an admission of violation of any law, rule, or regulation.
Defendant maintains and reserves all defenses it may have to any alleged violations
that may be raised in the future.

54.    <u>Counterparts</u>. This Consent Decree may be executed in any number of
counterparts, all of which together shall constitute one original document.  Telecopy
and/or facsimile copies of original signature shall be deemed to be originally
executed counterparts of this Consent Decree.

55.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendant
each certify that s/he is fully authorized by the party whom s/he represents to enter
into this Consent Decree. A Party's signature to this Consent Decree transmitted by
facsimile or electronic mail shall be deemed binding.

56.    <u>Construction</u>. The language in all parts of this Consent Decree shall be
construed according to its plain and ordinary meaning, except as to those terms
defined in the Permit, the Clean Water Act, or specifically herein. The captions and
paragraph headings used in this Consent Decree are for reference only and shall not
affect the construction of this Consent Decree.

57.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final
settlement of this matter.

58.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent
Decree is intended to be a full and complete statement of the terms of the agreement

83717-00002/5055118.10

between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

59.   Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

60.   Choice of Law. The laws of the United States shall govern this Consent Decree.

61.   Diligence. Defendant shall diligently file and pursue all required permit applications for any required BMPs and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

62.   Effect of Consent Decree. Compliance with this Consent Decree does not mean that Defendant is complying with the General Permit, the Clean Water Act, or any other law, rule, or regulation.

63.   Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

64.   Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties and approved by the Court. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

65.   Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

1   successors and assigns. Either Party shall notify the other within sixty (60) days of

2   any assignment.

3        66.   <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default

4   in the performance of any of their respective obligations under this Consent Decree

5   when performance becomes impossible due to a Force Majeure event. A Force

6   Majeure event is any circumstance beyond a Settling Party's control, including

7   without limitation, any act of God, war, fire, earthquake, weather event making

8   performance impossible (*e.g.*, flood, windstorm, MS4 failure), pandemic, public

9   health crisis, or natural catastrophe; criminal acts; civil disturbance, vandalism,

10  sabotage, or terrorism; restraint by court order or public authority or agency; or

11  action, non-action or delay by, or temporary or permanent inability to obtain the

12  necessary authorizations or approvals from, any governmental agency or permitting

13  entity. A Force Majeure event shall not include normal inclement weather for Long

14  Beach, economic hardship, inability to pay, or employee negligence. Any party

15  seeking to rely upon this Paragraph to excuse or postpone performance shall have the

16  burden of establishing that it could not reasonably have been expected to avoid the

17  Force Majeure event and which by exercise of due diligence has been unable to

18  overcome the failure of performance. The Parties shall exercise due diligence to

19  resolve and remove any Force Majeure event.

20       67.   <u>Correspondence</u>. All notices required herein or any other correspondence

21  pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail

22  transmission to the e-mail address listed below, or if electronic mail is not feasible,

23  then by certified U.S. mail with return receipt, or by hand delivery to the following

24  addresses:

25

26

27

28

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

1

2  <u>If to Plaintiff</u>:                           <u>If to Defendant</u>:

3  Los Angeles Waterkeeper                    Tell Steel, Inc.
   Barak Kamelgard                            Kevin McClister, President
4  barak@lawaterkeeper.org                    2345 W. 17th Street
   Benjamin Harris                            Long Beach, CA 90813
5  ben@lawaterkeeper.org                      Kevin@tellsteel.com
   360 E 2nd St., Suite 250                   800-734-8355
6  Los Angeles, CA 90012
   (310) 394-6162
7

8  <u>With copies to</u>:                          <u>With copies to</u>:
   Jesse C. Swanhuyser                        Sherry E. Jackman
9  Sycamore Law, Inc.                         Greenberg Glusker LLP
   1004 O'Reilly Avenue, Ste. 100             2049 Century Park E #2600,
10 San Francisco, CA 94129                    Los Angeles, CA 90067
   jesse@sycamore.law                         sjackman@greenbergglusker.com
11 (415) 360-2962                             (310) 201-7526

12

13

14 Notifications of communications shall be deemed submitted three (3) days after the

15 date that they are postmarked and sent by first-class mail, or immediately after

16 acknowledgement of receipt via email by the receiving party. Any change of address

17 or addresses shall be communicated in the manner described above for giving notices.

18      68.    If for any reason the Federal Agencies should object to entry of this

19 Consent Decree or to any portion of this Consent Decree or the District Court should

20 decline to approve this Consent Decree in the form presented, the Parties shall use

21 their best efforts to work together to modify the Consent Decree within thirty (30)

22 days so that it is acceptable to the Federal Agencies or the District Court. If the

23 Parties are unable to modify this Consent Decree in a mutually acceptable manner

24 that is also acceptable to the District Court, this Consent Decree shall immediately be

25 null and void as well as inadmissible as a settlement communication under Federal

26 Rule of Evidence 408 and California Evidence Code section 1152.

27

28

[PROPOSED] CONSENT DECREE

The Parties enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: March 1, 2024                    By: _____
                                            Bruce Reznik
                                            Executive Director
                                            Los Angeles Waterkeeper

Dated: March 1, 2024                    By: _____
                                            Kevin McClister
                                            President
                                            Tell Steel, Inc.

APPROVED AS TO FORM

Dated: March 1, 2024                    By: _____
                                            Jesse Swanhuyser
                                            Partner
                                            SYCAMORE LAW, INC.
                                            Attorneys for Plaintiff
                                            Los Angeles Waterkeeper

Dated: March 1, 2024                    By: _____
                                            Sherry Jackman
                                            Partner
                                            GREENBERG GLUSKER LLP
                                            Attorneys for Defendant
                                            Tell Steel, Inc.

[PROPOSED] CONSENT DECREE

83717-00002/5055118.10

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated: March 27, 2024

_____
HON. GEORGE H. WU,
United States District Judge

36